Matter of Nicole TT. v David UU. (2019 NY Slip Op 05729)





Matter of Nicole TT. v David UU.


2019 NY Slip Op 05729


Decided on July 18, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 18, 2019

525275

[*1]In the Matter of NICOLE TT., Appellant,
v
DAVID UU., Respondent. (And Six Other Related Proceedings.)

Calendar Date: April 24, 2019

Before: Lynch, J.P., Mulvey, Devine, Aarons and Rumsey, JJ.


Hug Law, PLLC, Albany (Matthew Hug of counsel), for appellant.
E. Stewart Jones Hacker Murphy, LLP, Troy (James C. Knox of counsel), for respondent.
Sandra M. Colatosti, Albany, attorney for the child.



MEMORANDUM AND ORDER
Lynch, J.P.
Appeal from an order of the Family Court of Rensselaer County (Cholakis, J.), entered March 29, 2018, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2010). In early January 2016, the child allegedly reported to the mother that the father had touched her in a sexual manner. After contacting the mother's pediatrician, the mother took the child to have a sexual assault examination (hereinafter SANE), and the child was interviewed by a Child Protective Services (hereinafter CPS) caseworker. On January 8, 2016, the mother commenced a proceeding seeking sole custody of the child; she also filed a family offense petition. Family Court issued an order of protection against the father prohibiting him from having any contact with the child. The father, in turn, filed a violation petition and cross petition seeking sole custody of the child. In April 2016, Family Court ordered a forensic evaluation to be completed by Mary O'Connor, a physician. On September 28, 2016, the mother filed another family offense petition contending that the child stated that the father had again sexually abused her during a supervised visit three days before. When it was revealed that the father wore a body camera during that visit that did not show any inappropriate conduct, Family Court directly issued a temporary order removing the child from the mother's custody and placing her in the custody of the paternal grandmother. The court further directed that any visitation would have to be supervised by the paternal grandmother or through Jewish Family Services. Following a trial held over 13 nonconsecutive days from October 19, 2016 through February 1, 2017, and a Lincoln hearing, Family Court dismissed the mother's custody petition and granted the father's cross petition, awarded the father sole legal and physical custody of the [*2]child and allotted the mother up to two hours of supervised visitation each week. The mother appeals.
"Family Court's primary consideration in an initial custody determination is the best interests of the child" (Matter of Amanda YY. V Ramon ZZ., 167 AD3d 1260, 1261 [2018] [citations omitted]; see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]). There are a number of relevant factors that must be considered prior to determining a child's best interests, "including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Shirreece AA. v Matthew BB., 166 AD3d 1419, 1422 [2018]). "Given that Family Court is in a superior position to evaluate testimony and assess witness credibility, we accord great deference to Family Court's custody determinations, and we will not disturb such a determination if it is supported by a sound and substantial basis in the record" (Matter of Davis v Church, 162 AD3d 1160, 1161 [2018] [citations omitted], lv denied 32 NY3d 906 [2018]).
When the child was born, the parties resided in a basement apartment in the home of the child's maternal great-grandmother. The father continued to work full time and the mother stayed home to care for the child. Although the mother eventually returned to work, she remained the child's primary caretaker. As Family Court noted, the father frequently spent his nonworking hours playing an interactive video game while wearing a headset, leaving the mother to attend to the child. Both parents have used drugs and alcohol at different periods throughout their lives, and, during the fact-finding hearing, both were seeking help by attending meetings to address the issue. Ultimately, Family Court concluded that the father could provide a more stable home, because he worked full time and had the support of his parents. In contrast, the mother was unemployed and relied on her aging great-grandmother for help. The court determined that the mother's home environment was "less than ideal" because the mother "regularly filled the child's head with negative ideas about the father." The court also determined that the mother was less fit than the father because she tested positive for opiates and was, in the court's view, "in need of significant professional help."
The record shows that, in October 2015, a CPS report was indicated for abuse after an investigation validated a claim that the father punched the mother in the face in the child's presence. The CPS caseworker observed the mother with a black eye while investigating the report. The child's maternal great-grandmother and another witness testified that they regularly heard the parties fighting and observed bruises on the mother. The event that precipitated the mother's January 2016 petitions occurred on January 4, 2016, when the mother returned home at approximately 8:00 p.m. to find the father playing a video game and the child awake, alone in her room. The child told the mother that the father had touched her in the vaginal area. The mother sent the child upstairs where the child told her maternal great-grandmother that the father "hurt" her "hiney," meaning her vagina. The child was seen by her pediatrician the next day, was subjected to a SANE and the police and CPS stepped in to investigate. At all times, the father denied that he touched his daughter and agreed to undergo a test that purportedly assessed whether he was sexually attracted to children. As discussed, the September 2016 abuse claim was disproven. Following that incident, for reasons not entirely clear in the record, the Department of Social Services withdrew its Family Ct Act article 10 petition stemming from the January 2016 sexual abuse allegation.
We agree with the mother and the attorney for the child that Family Court's decision and order misstates and mischaracterizes the record evidence and that the determination lacks a sound and substantial basis in the record. For example, the court determined that a "curious" exchange between the child and a therapist "tended to suggest that the child was confused about her feelings toward her father," characterized the testimony by the mother's forensic psychologist who deemed the mother mentally fit as a "brief interlude of comic relief," and lauded the father's willingness to undergo penile plethysmograph testing — characterized as "a colonoscopy of the soul" — as "speak[ing] volumes to his actual innocence." The court went so far as to criticize the [*3]forensic expert's testimony concerning the September 2016 visitation as an example of blending incidents by commenting, "The only blending here . . . is that of pseudoscience with the world's oldest profession." The record does not support any of this unfortunate and bizarre commentary.
It is concerning that Family Court wholeheartedly credited the father's testimony, viewed most — if not all — of the evidence in a light least favorable to the mother (see Matter of Shirreece AA. v Matthew BB., 166 AD3d at 1424) and diminished the evidence of domestic violence perpetrated by the father against the mother in the child's presence. To illustrate, the father's testimony that the mother broke her wrist falling over a fence while she was drinking was credited over the mother's explanation that the two were fighting and he pushed her off the porch. The father's testimony that the mother hurt and cut herself on her legs was credited because, according to the court, "never [did] she ever appear[ ] wearing any garment that revealed even the slightest part of her legs." We also take note that there is no record evidence, despite the mother's hospitalization for a "breakdown" when she was 15 years old, that the mother has been diagnosed with a mental illness.
We are mindful that the record shows that the father did not sexually abuse the child during the supervised visit in September 2016. That conclusion, however, does not validate Family Court's determination that the January 2016 allegation was a "fabrication" that the mother "was almost eager to embrace" as a "means of escape from a relationship" that "would also provide her with self-affirmation as [the child's] savior" and the "break-up would not have been [the mother's fault]." To the contrary, the record evidence demonstrates that the police investigator, therapists and evaluators all believed that the child was telling the truth in January 2016. All agreed that the mother's response to her child's report that she had been abused — whether it was true or not — was appropriate. Notably, the child's therapist did not believe that the child should be forced to visit with the father. Contrary to the court's erroneous finding, no professional involved in the case testified that the child had been coached or that the mother was consciously trying to alienate the child from the father.
We agree with Family Court that the child is fortunate to have many people in her life that love her and want to care for her. Clearly, both parents have made mistakes and, if willing, both would likely benefit from therapeutic treatment. In fact, the record demonstrates that the mother has complied with all conditions imposed and recommendations made during these proceedings to obtain treatment for herself and the child. Meanwhile, the father participated in the court-ordered forensic evaluation, but otherwise resisted a mental health evaluation. There was clear evidence of the father's abusive behavior and no evidence that the child was coached to report that she was sexually abused. We cannot agree with the court's assessment of the evidence and conclude that the court's determination is not supported by a sound and substantial basis in the record, and reflects an undue bias in favor of the father. We thus reverse the order and, given the passage of time since the fact-finding hearing, we remit the matter to Family Court for updated fact-finding before a different judge and a custody determination that reflects the best interests of the child (see Matter of Shirreece AA. v Matthew BB., 166 AD3d at 1425). The parties' remaining arguments are either not preserved or not necessary to resolve.
Mulvey, Devine, Aarons and Rumsey, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, matter remitted to the Family Court of Rensselaer County for further proceedings not inconsistent with this Court's decision before a different judge, and, pending said proceedings, the terms of said order shall remain in effect on a temporary basis.